FILED

2024 Oct-29  PM 04:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
<u>**NORTHEASTERN DIVISION**</u>

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No.** |
| | ) | |
| **COOGAN PRESTON** | ) | |

<u>**PLEA AGREEMENT**</u>

The Government and the defendant, COOGAN PRESTON, hereby acknowledge the following plea agreement in this case:

<u>**PLEA**</u>

The defendant agrees to (i) plead guilty to COUNTS ONE and TWO of the Information filed in the above-numbered and -captioned matter; (ii) consent to forfeiture as described in section XII below; and (iii), waive certain rights to direct appeal and collateral attack as outlined in section IV of this agreement.  In exchange, the United States Attorney, acting on behalf of the Government and through the undersigned Assistant United States Attorney, agrees to recommend the disposition specified below, subject to the conditions in section VII.

## TERMS OF THE AGREEMENT

### I.    MAXIMUM PUNISHMENT

The defendant understands that the maximum statutory punishment that may be imposed for **Gratuity Received by a Public Official**, in violation of Title 18, United States Code, Section 201(c)(1)(B), as charged in **COUNT ONE**, is:

    a.    Imprisonment for not more than 2 years;

    b.    A fine of not more than $250,000; or,

    c.    Both (a) and (b);

    d.    Supervised release of not more than 1 year; and

    e.    A mandatory Special Assessment Fee of $100 per count.

The defendant understands that the maximum statutory punishment that may be imposed for **Conspiracy to Commit Bribery of a Public Official**, in violation of Title 18, United States Code, Sections 371 and 201(b)(1), as charged in **COUNT TWO**, is:

    **A.**    Imprisonment for not more than 5 years;

    **B.**    A fine of not more than $250,000 or not more than three times the monetary value of the thing of value given in this case, whichever is greater, or,

    **C.**    Both A and B;

    **D.**    Supervised release of not more than 3 years; and

    Defendant's Initials _____

**E.**     A special assessment of $100.

## II.     FACTUAL BASIS FOR PLEA

The Government is prepared to prove, at a minimum, the following facts at the trial of this case:

**COUNT ONE - Gratuity Received by a Public Official**

James Robert Stephens (Stephens) is the former President and owner of Byrd Maintenance Services, Inc. (BMSI).  BMSI is a fabrication, millwright, and piping company operating out of Burnsville, MS and Decatur, AL.  At some time in 2015, Stephens met COOGAN PRESTON (PRESTON), a public official (Government Project Lead), for the Department of the Army on Redstone Arsenal, and the two became social friends.  During the course of their friendship which ended in or around March 2019, Stephens provided currency and other items of value described below to PRESTON.  In exchange for this currency and these items of value, PRESTON identified subcontracting opportunities for BMSI by identifying a prime contract vehicle and convincing the prime contractor to add BMSI as a subcontractor.  Once added as a subcontractor, BMSI would perform work and be paid for the work resulting in income for BMSI.  In some cases, money paid to BMSI would then be paid to PRESTON in cash.

Beginning in 2015 and continuing until December 2018, Stephens provided the following currency and other items of value to PRESTON:

Defendant's Initials

On February 24, 2016, Stephens purchased a 2016 Polaris RAZR (Serial Number 3NSVFM997GF468170) from Bama Buggies located in Tuscaloosa, AL. The purchase price of the RAZR was $27,869.23. As payment for this RAZR, Stephens traded in a 2015 Diesel Polaris Ranger (Serial Number 4XARUAD12FT121177 valued at $12,500.00 and paid the remainder via BMSI Check number 031414, drawn on a BSMI account at Peoples Bank. The 2015 RAZR was provided to Stephens by PRESTON who knew of and consented to this 2015 RAZR being used to offset the purchase price of the 2016 RAZR as a trade in. Neither Stephens, or any person or entity acting on behalf of Stephens, had any involvement or paid or gave anything of value with regard to how the 2015 RAZR came to be in the possession of PRESTON. However, the 2016 RAZR was immediately turned over to PRESTON for his personal use and PRESTON ultimately disposed of the vehicle in 2017 or 2018 via trade-in for another all-terrain vehicle which was also for PRESTON's personal use.

On August 31, 2016, Stephens signed the title of a 2008 Ford F250 Super Duty truck over to PRESTON. The truck was a BMSI work truck, with an accurate odometer reading of over 200,000 miles. The truck was in relatively poor mechanical condition. A bill of sale purportedly covering this transaction indicates a purchase price of $6,500 for the truck. However, PRESTON paid no money to Stephens for

Defendant's Initials

this truck.  Between September 2016 and December 2018, Stephens paid or caused to be paid $9,314.68 in oil changes, maintenance, repairs, and new tires for the truck.

On the last of May or early June 2018, PRESTON provided Stephens an invoice for $14,500 worth of landscaping work performed at PRESTON's home.

Between June 2018 and December 2018, Stephens paid or caused to be paid to PRESTON $64,600 in cash.  To facilitate these payments, Stephens would write a check to "Cash" and direct a BMSI employee to go cash the check at BMSI's bank. Stephens, a bank employee, or a BMSI employee would then package the cash in an envelope and store the envelope at the BMSI office until PRESTON came to collect it.  Some of these envelopes were delivered to PRESTON by Stephens.  Each payment totaling $64,600 was arranged and ordered by Stephens and conveyed to PRESTON at the BMSI office.

Beginning in 2015 and continuing until 2018, PRESTON identified two subcontract opportunities for BMSI as part of PRESTON's scheme with Stephens, W9113M-10-D-0003 task orders 1504 and 1604.

Each of the above-referenced contracts and task orders are in direct support of the warfighters operating in and around Afghanistan during the War in Afghanistan  and, as a result, the violation to which PRESTON is hereby pleading guilty was committed in connection with the negotiation, procurement, award, performance, payment for, interim financing, cancelation, or other termination or

settlement, of any contract, subcontract, or purchase order which is connected with or related to the prosecution of the war or directly connected with or related to the authorized use of the Armed Forces, or with any disposition of termination inventory by any war contractor or Government agency.

**COUNT TWO - Conspiracy to Commit Bribery of a Public Official**

In or around 2008, an individual who later would work for a government contractor ("Employee 1") and PRESTON became social friends.  PRESTON became a public official (Government Project Lead) for the Department of the Army on Redstone Arsenal.  In or around 2016, Employee 1 met Contractor 1.  Shortly after meeting Contractor 1, Employee 1 introduced Contractor 1 to PRESTON. Employee 1 began working for Contractor 1 in or around 2016.  Beginning in or around 2016 and continuing until at least 2021, Employee 1, Contractor 1, and PRESTON formed, participated in and acted under an illicit business conspiracy whereby Employee 1 and Contractor 1 agreed to provide money and other items of value to PRESTON in order to influence official acts, to wit: PRESTON would, and PRESTON indeed did, identify subcontracting opportunities for one or more of the companies owned and operated by Contractor 1 (the "Companies") by identifying a prime contract vehicle and convincing the prime contractor to add one or more of the Companies as a subcontractor.  In furtherance of the scheme, PRESTON would identify funding for the projects and apply that funding to the prime contracts

Defendant's Initials

through task orders.  Once added as a subcontractor, one or more of the Companies would perform work and be paid for the work resulting in income for the Companies. This scheme continued until in or around 2019 when Employee 1 decided to leave his role with one of the Companies and took ownership of a tire store.

Beginning in or around 2016 and continuing until 2019, Employee 1 and Contractor 1 conspired to pay bribes to PRESTON.  To facilitate these payments, Contractor 1 would write a check drawn on bank accounts belonging to one of the Companies to "Cash" and direct Employee 1 to travel to one of Contractor 1's offices, pick up the check, cash the check, and then provide the money directly to PRESTON.

Bank records indicate and Employee 1 agrees that the following checks were written or printed by or on behalf of Contractor 1 to "Cash," signed by Contractor 1, provided to Employee 1, and cashed by Employee 1:

| Check No. | Date Written | Date Negotiated | "To" | Amount | Endorsed by |
|-----------|--------------|-----------------|------|--------|-------------|
| 1074 | 3/17/2017 | 4/19/2017 | Cash | $7,200.00 | Employee 1 |
| 1076 | 3/17/2017 | 4/25/2017 | Cash | $7,200.00 | Employee 1 |
| 1077 | 3/17/2017 | 5/1/2017 | Cash | $7,200.00 | Employee 1 |
| 1078 | 3/17/2017 | 5/11/2017 | Cash | $7,200.00 | Employee 1 |
| 1079 | 3/17/2017 | 5/2/2017 | Cash | $7,200.00 | Employee 1 |
| 1080 | 3/17/2017 | 5/19/2017 | Cash | $7,200.00 | Employee 1 |

Employee 1 then took the cash from these checks and provided it to PRESTON in furtherance of the bribery conspiracy.

Defendant's Initials _____

Bank records further indicate, and PRESTON agrees, that the following checks were written or printed by or on behalf of Contractor 1 to "Cash," signed by Contractor 1, and negotiated by Contractor 1.  Contractor 1 then provided the cash from these checks to Employee 1 with instructions to provide the cash to PRESTON in furtherance of the bribery conspiracy.

| Check No. | Date Written | Date Negotiated | "To" | Amount | Endorsed by |
|---|---|---|---|---|---|
| 1075 | 3/17/2017 | 6/15/2017 | Cash | $7,200.00 | Contractor 1 |
| 1081 | 3/17/2017 | 6/15/2017 | Cash | $7,200.00 | Contractor 1 |
| 1082 | 3/17/2017 | 6/15/2017 | Cash | $7,200.00 | Contractor 1 |
| 1106 | 4/11/2017 | 6/15/2017 | Cash | $5,000.00 | Contractor 1 |
| 1107 | 4/11/2017 | 6/15/2017 | Cash | $8,000.00 | Contractor 1 |
| 1108 | 4/11/2017 | 6/15/2017 | Cash | $5,000.00 | Contractor 1 |
| 1109 | 4/11/2017 | 6/15/2017 | Cash | $7,500.00 | Contractor 1 |
| 1110 | 4/11/2017 | 6/15/2017 | Cash | $4,650.00 | Contractor 1 |
| 1111 | 4/11/2017 | 6/15/2017 | Cash | $7,550.00 | Contractor 1 |
| 1112 | 4/11/2017 | 6/15/2017 | Cash | $7,200.00 | Contractor 1 |
| 1113 | 4/11/2017 | 6/15/2017 | Cash | $8,200.00 | Contractor 1 |
| 1114 | 4/11/2017 | 6/16/2017 | Cash | $8,900.00 | Contractor 1 |
| 1115 | 4/11/2017 | 6/15/2017 | Cash | $6,500.00 | Contractor 1 |
| 1116 | 4/11/2017 | 6/15/2017 | Cash | $3,500.00 | Contractor 1 |
| 1127 | 6/15/2017 | 6/16/2017 | Cash | $6,400.00 | Contractor 1 |
| 1128 | 6/15/2017 | 6/16/2017 | Cash | $5,525.00 | Contractor 1 |
| 1130 | 6/15/2017 | 6/16/2017 | Cash | $4,475.00 | Contractor 1 |
| 1131 | 6/15/2017 | 6/16/2017 | Cash | $4,480.00 | Contractor 1 |
| 1132 | 6/15/2017 | 6/19/2017 | Cash | $5,520.00 | Contractor 1 |
| 1133 | 6/15/2017 | 6/16/2017 | Cash | $4,700.00 | Contractor 1 |
| 1134 | 6/15/2017 | 6/19/2017 | Cash | $5,300.00 | Contractor 1 |
| 1135 | 6/15/2017 | 6/16/2017 | Cash | $7,175.00 | Contractor 1 |
| 1136 | 6/15/2017 | 6/16/2017 | Cash | $5,825.00 | Contractor 1 |
| 1137 | 6/15/2017 | 6/16/2017 | Cash | $7,000.00 | Contractor 1 |
| 1138 | 6/15/2017 | 6/19/2017 | Cash | $5,160.00 | Contractor 1 |
| 1139 | 6/15/2017 | 6/16/2017 | Cash | $4,840.00 | Contractor 1 |

Defendant's Initials

The investigation further uncovered a check written from one of the Companies and signed by Contractor 1 to PRESTON for $50,000. This check, number 1416, was drawn on account number xxxx632 and was dated January 14, 2019. PRESTON performed no additional work for Contractor 1 or the Companies in exchange for this money. This $50,000 payment was a bribe in furtherance of the bribery conspiracy.

The investigation further uncovered a check written by one of the Companies and signed by Contractor 1 to University 1 as a credit to an account at University 1 related to one of PRESTON's family members, a student. On June 5, 2018 one of the Companies issued a $12,500 check, numbered 1001 and drawn on account number xxxxxx396. The check identifies PRESTON's family member as the student for which the payment should be applied. On June 12, 2018, five days after the date of the check, a representative of the Companies emailed a generic scholarship application to PRESTON. Prior to sending, someone added a header to the generic document identifying the scholarship as being issued by one of the Companies. PRESTON, or someone on PRESTON's behalf, filled out the application and returned it to the Companies' representative. Statements by a representative of the Companies indicate that this was the only scholarship ever provided to any student by the Companies, that it was not publicized or made available to any other students, and that PRESTON's application was the only one

Defendant's Initials

received.  On August 16, 2018, University 1 issued check number 22022737 drawn on account number xxx0195 to PRESTON's family member as a refund for overages paid during the semester.  The proceeds from check number 22022737 were deposited into a checking account owned jointly by PRESTON and his ex-wife on August 24, 2018.  This scholarship was a bribe in furtherance of the conspiracy.

The investigation further uncovered a check written from one of the Companies and signed by Contractor 1 to PRESTON for $17,308.76.  This check, number 1223, was drawn on account number xxxx632 and was dated December 19, 2017.  The Memo line for this check indicates it is for a "RAZR Purchase." Investigation uncovered that no vehicles owned by PRESTON at or around the time of this date of this check were transferred.  This $17,308.76 payment was a bribe in furtherance of the bribery conspiracy.

Beginning in or around 2016 and continuing until 2019, PRESTON identified the following subcontract opportunities, among others, for Employee 1, Contractor 1, and the Companies as part of PRESTON's scheme with Employee 1 and Contractor 1:

- Contract number: W9113M-10-D-0003 – Task Order 1504
- Contract number: W9113M-10-D-0003 – Task Order 1604

Each of the above-referenced contracts and task orders is in direct support of the warfighters operating in and around Afghanistan during the War in Afghanistan

Defendant's Initials

and, as a result, the violation to which PRESTON is hereby pleading guilty was committed in connection with the negotiation, procurement, award, performance, payment for, interim financing, cancelation, or other termination or settlement, of any contract, subcontract, or purchase order which is connected with or related to the prosecution of the war or directly connected with or related to the authorized use of the Armed Forces, or with any disposition of termination inventory by any war contractor or Government agency.

At the direction of government investigators, on or about February 22, 2021, Employee 1, PRESTON, and Contractor 1 met again to discuss their criminal conspiracy. PRESTON told Employee 1 and Contractor 1 he had identified a project which could result in up to $165,000 in profit once the work was completed. PRESTON asked, "Is that enough for us to do…to set up like what we done before." The three co-conspirators then negotiated how to split up the profit agreeing that $10,000 would be reserved to pay taxes, PRESTON would receive $15,000, and Employee 1 would receive the rest which represented Employee 1's share and Contractor 1's share. PRESTON approached the prime contractor who agreed to hire Employee 1 as a temporary employee under contract number W31P4Q-19-F-C003. The original plan was for Employee 1 to perform the work for the prime contractor and bill through one of the Companies. However, the prime contractor wanted to hire Employee 1 directly as an hourly employee instead. This arrangement

Defendant's Initials

reduced the profit available through performance for the co-conspirators from $165,000 to an amount substantially less.  Employee 1 was paid for the work he performed on the contract.

In exchange for the official acts by PRESTON described above, on February 22, 2021, Employee 1 paid PRESTON a reduced amount of $1,000 by placing the currency in a magazine and handing the magazine to PRESTON.  On April 8, 2021, Contractor 1 paid PRESTON $1,200, which Contractor 1 also said came from Employee 1.

PRESTON agrees that the total amount of the bribes received from Contractor 1 as part of the conspiracy described in and related to Count 2 totaled $265,700.

**The defendant hereby stipulates that the facts stated above are substantially correct and that the Court can use these facts in calculating the defendant's sentence.  The defendant further acknowledges that these facts do not constitute all of the evidence of each and every act that the defendant and/or any co-conspirators may have committed.**

COOGAN PRESTON

Defendant's Initials

## III.     RECOMMENDED SENTENCE

Subject to the limitations in section **VII** regarding subsequent conduct and pursuant to Fed. R. Crim. P. 11(c)(1)(B), the Government will recommend the following disposition:

**A.**     That the defendant be awarded a two (2) level reduction in the defendant's adjusted offense level, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the defendant's criminal conduct. The Government agrees to make a motion pursuant to USSG §3E1.1(b) for an additional one-level decrease in recognition of the defendant's prompt notification to the Government of the intention to enter a plea of guilty. The Government may oppose any adjustment for acceptance of responsibility if the defendant: (1) fails to admit each and every item in the factual stipulation; (2) denies involvement in the offense; (3) gives conflicting statements about the defendant's involvement in the offense; (4) is untruthful with the Court, the Government, or the United States Probation Officer; (5) obstructs or attempts to obstruct justice prior to sentencing; (6) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (7) attempts to withdraw the defendant's plea of guilty for any reason other than those expressly enumerated in the "Waiver of Right to Appeal and Post-Conviction Relief" section of this Plea Agreement;

**B.**     That the defendant be remanded to the custody of the Bureau of Prisons and incarcerated for a term consistent with the low end of the advisory United States Sentencing Guideline range as calculated by the Court at the time of sentencing;

**C.**     That following the said term of imprisonment, the defendant be placed on supervised release for a period to be determined by the Court, subject to the Court's standard conditions of supervised release;

**D.**     That the defendant be required to pay a fine in accordance with the Sentencing Guidelines should the Court determine that the defendant has the ability to pay a fine, said amount due and owing as of the date sentence is pronounced, with any outstanding balance to be paid in full

Defendant's Initials _____

by the expiration of the term of supervised release;

E.     That the defendant be required to comply with the forfeiture provisions set forth in section XII of this agreement; and

F.     That the defendant pay a special assessment of $200, said amount due and owing as of the date sentence is pronounced.

G.     That, to the best of the Government's knowledge, the defendant satisfies the criteria described in U.S.S.G. § 4C1.1(a).

H.     That with respect to Count 2, $265,700 is the "value of the payment" and "the value of anything obtained or to be obtained by a public official or others acting with a public official," as those terms are used in the *United States Sentencing Guidelines*. Additionally, the government is not aware of greater amount that would constitute a "benefit received or to be received in return for the payment" or a "loss to the government from the offense" as those terms are defined by the Guidelines.

## IV.     WAIVERS

### A.     STATUTE OF LIMITATIONS WAIVER

**In consideration of the recommended disposition of this case, I, COOGAN PRESTON, hereby understand, acknowledge, and agree that if this plea agreement is set aside for any reason, I will not assert any defense based on any applicable statute of limitations or the Speedy Trial Act, 18 U.S.C. § 3161,** *et seq.,* **that includes the passage of time from and including the date of this plea agreement until and including the date of entry of any order setting this plea agreement aside.**

### B.     RIGHT TO APPEAL AND POST-CONVICTION RELIEF

Defendant's Initials

In consideration of the recommended disposition of this case, I, COOGAN PRESTON, hereby waive and give up my right to appeal my conviction and/or sentence in this case, as well as any fines, restitution, and forfeiture orders, the Court might impose. Further, I waive and give up the right to challenge my conviction and/or sentence, any fines, restitution, forfeiture orders imposed or the manner in which my conviction and/or sentence, any fines, restitution, and forfeiture orders were determined in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255, and any argument that (1) the statute(s) to which I am pleading guilty is or are unconstitutional or (2) the admitted conduct does not fall within the scope of the statute(s).

The defendant reserves the right to contest in an appeal or post-conviction proceeding(s) the following:

1.  Any sentence imposed in excess of the applicable statutory maximum sentence(s);

2.  Any sentence imposed in excess of the Guidelines range determined by the Court at the time sentence is imposed; and

3.  Ineffective assistance of counsel.

The defendant acknowledges that before giving up these rights, the defendant discussed the United States Sentencing Guidelines and their application to the defendant's case with the defendant's attorney, who

explained them to the defendant's satisfaction. The defendant further acknowledges and understands that the Government retains its right to appeal where authorized by statute.

I, COOGAN PRESTON, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.

_____
**COOGAN PRESTON**

## V.      UNITED STATES SENTENCING GUIDELINES

The defendant's counsel has explained to the defendant, that in light of the United States Supreme Court's decision in *United States v. Booker*, the federal sentencing guidelines are **advisory** in nature. Sentencing is in the Court's discretion and is not required to be within the guideline range. The defendant agrees that, pursuant to this agreement, the Court may use facts it finds by a preponderance of the evidence to reach an advisory guideline range, and the defendant explicitly waives any right to have those facts found by a jury beyond a reasonable doubt.

## VI.     AGREEMENT NOT BINDING ON COURT

The defendant fully and completely understands and agrees that it is the Court's duty to impose sentence upon the defendant and that any sentence recommended by the Government is **NOT BINDING UPON THE COURT,** and

that the Court is not required to accept the Government's recommendation. Further, the defendant understands that if the Court does not accept the Government's recommendation, the defendant does not have the right to withdraw the guilty plea.

## VII.     VOIDING OF AGREEMENT

The defendant understands that if the defendant (a) violates any federal, state, or local law or any condition of pretrial release after entering into this plea agreement, (b) moves the Court to accept a plea of guilty in accordance with, or pursuant to, the provisions of *North Carolina v. Alford*, 400 U.S. 25 (1970), (c) tenders a plea of *nolo contendere* to the charges, (d) violates any other term of this plea agreement, and/or (e) does or says anything that is inconsistent with the acceptance of responsibility, the plea agreement will become NULL and VOID at the election of the United States, and the United States will not be bound by any of the terms, conditions, or recommendations, express or implied, which are contained herein.  Further, such election will not entitle the defendant to withdraw a previously entered plea.

## VIII.    OTHER DISTRICTS AND JURISDICTIONS

The defendant understands and agrees that this agreement **DOES NOT BIND** any other United States Attorney in any other district, or any other state or local authority.

Defendant's Initials

## IX.   COLLECTION OF FINANCIAL OBLIGATION

In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to:

- fully disclose all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party;

- promptly submit a completed financial statement to the United States Attorney's Office, in a form that it provides and as it directs;

- identify all assets over which the defendant exercises or exercised control, directly or indirectly, within the past five years, or in which the defendant has or had during that time any financial interest;

- take all steps as requested by the Government to obtain from any other parties by any lawful means any records of assets owned at any time by the defendant;

- undergo any polygraph examination the Government may choose to administer concerning such assets and to provide and/or consent to the release of the defendant's tax returns for the previous five years.

The defendant further agrees that the above information, as well as any of the defendant's financial statements and disclosures, will be complete, accurate, and truthful.  Finally, the defendant expressly authorizes the United States Attorney's

Defendant's Initials

Office to obtain a credit report on the defendant in order to evaluate the defendant's

ability to satisfy any financial obligation imposed by the Court.

## X.    AGREEMENT REGARDING RELEVANT CONDUCT AND RESTITUTION

As part of the defendant's plea agreement, the defendant admits to the above

facts associated with the charges and relevant conduct for any other acts.   The

defendant understands and agrees that the relevant conduct contained in the factual

basis will be used by the Court to determine the defendant's range of punishment

under the advisory sentencing guidelines.   The defendant admits that all of the crimes

listed in the factual basis are part of the same acts, scheme, and course of conduct.

This agreement is not meant, however, to prohibit the United States Probation Office

or the Court from considering any other acts and factors, which may constitute or

relate to relevant conduct.   Additionally, if this agreement contains any provisions

providing for the dismissal of any counts, the defendant agrees to pay any

appropriate restitution to each of the separate and proximate victims related to those

counts should there be any and waives objection to the inclusion of that restitution

in any order issued by the Court.

## XI.    TAX, FORFEITURE AND OTHER CIVIL/ADMINISTRATIVE PROCEEDINGS

Unless otherwise specified herein, the defendant understands and

acknowledges that this agreement does not apply to or in any way limit any pending

Defendant's Initials

or prospective proceedings related to the defendant's **tax liabilities**, if any, or to any pending or prospective **forfeiture** or other **civil** or **administrative** proceedings.

## XII.   FORFEITURE

The defendant agrees to consent to the immediate entry of a final order of forfeiture against the defendant, pursuant to Fed. R. Crim. P. 32.2(b)(l), in the amount of $110,283.91 related to COUNT ONE and $265,700 related to COUNT TWO, which represents proceeds the defendant personally obtained, controlled, and benefitted from as a result of the offenses alleged in COUNTS ONE AND TWO of the Information and to which the defendant is indicating the defendant's desire to plead guilty by way of this written Plea Agreement. For purposes of entering said order of forfeiture, the defendant acknowledges that a nexus exists between said amount and the criminal offenses to which the defendant is pleading guilty.

The defendant acknowledges that if, due to an act or omission of the defendant, directly forfeitable property: (i) cannot be located upon the exercise of due diligence; (ii) have been transferred or sold to, or deposited with, a third party; (iii) have been placed beyond the jurisdiction of the Court; (iv) have been substantially diminished in value; or (v) have been commingled with other property which cannot be divided without difficulty, as a result, the Government is authorized under law to seek the forfeiture of any and all assets of the defendant as substitute assets for the purpose of satisfying the final order of forfeiture until same is satisfied

Defendant's Initials

in full.  As a result, the defendant consents to the forfeiture of any and all of the defendant's property up to the value of $110,283.91 related to COUNT ONE and $265,700 related to COUNT TWO, representing proceeds the defendant personally obtained, controlled, and benefitted from as a result of the offenses alleged in COUNTS ONE and TWO of the Information.

The defendant agrees to take all steps as requested by the Government to pass clear title to forfeitable assets to the Government, and to testify truthfully in any judicial forfeiture proceeding.  The defendant hereby waives the requirements of Fed. R. Crim. P. 32.2 regarding notice of the forfeiture in the Information, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.  The defendant also waives the requirements of Fed. R. Crim. P. 43(a) with respect to the imposition of any forfeiture sanction carried out in accordance with this plea agreement.  The defendant acknowledges that the defendant understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise the defendant of this, pursuant to Fed. R. Crim. P. 11(b)(1)(J), at the time the defendant's guilty plea is accepted.

The defendant further waives all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including any

Defendant's Initials _____

Double Jeopardy challenges that the defendant may have to the entry of a Forfeiture Order before sentencing, and any claims, defenses or challenges arising under the Excessive Fines Clause of the Eighth Amendment resulting from the forfeiture imposed as a result of this Information and/or any pending or completed administrative or civil forfeiture actions based upon the course of conduct that provides the factual basis for the forfeiture.

### Non-Abatement of Criminal Forfeiture

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon the defendant's heirs, successors, and assigns until the agreed forfeiture, including any agreed money judgment amount, is collected in full. To the extent that forfeiture pursuant to this agreement requires the defendant to disgorge wrongfully obtained criminal proceeds for the benefit of the defendant's victims, the defendant agrees that the forfeiture is primarily remedial in nature.

## XIII.    IMMIGRATION STATUS

The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the

United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which the defendant is pleading guilty. The defendant's guilty plea and conviction make it practically inevitable and a virtual certainty that the defendant will be removed or deported from the United States if the defendant is not a citizen of the United States. Removal and other immigration consequences are the subject of a separate proceeding, however; and the defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Understanding all of this, the defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that plea may entail, even if the consequence is automatic removal from the United States.

## XIV.    DEFENDANT'S ACKNOWLEDGEMENT

I have read and understand the provisions of this plea agreement consisting of 25 pages. I have discussed the case and my constitutional and other rights with my lawyer. I am satisfied with my lawyer's representation in this case. I understand that by pleading guilty, I will be waiving and giving up my right to continue to plead not guilty, to a trial by jury, to the assistance of counsel at that trial, to confront, cross-examine, or compel the attendance of witnesses, to present evidence on my behalf, to maintain my privilege against self-incrimination, and to the presumption

of innocence.  I agree to enter my plea as indicated above on the terms and conditions set forth herein.

**NO PROMISES OR REPRESENTATIONS OTHER THAN THOSE IN THE AGREEMENT HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO PLEAD GUILTY.**

I further state that I have not had any drugs, medication, or alcohol within the past 48 hours except as stated here:

_____

I understand that this plea agreement will take effect and will be binding as to the Parties **only** after all necessary signatures have been affixed hereto.

I have personally and voluntarily placed my initials on every page of this plea agreement and have signed the signature line below to indicate that I have read, understand, and approve all of the provisions of this plea agreement, both individually and as a total binding agreement.

*10-18-2024*
DATE

COOGAN PRESTON
Defendant

Defendant's Initials _____

## XV.     COUNSEL'S ACKNOWLEDGMENT

I have discussed this case with my client in detail and have advised my client of all of my client's rights and all possible defenses.  My client has conveyed to me that my client understands this plea agreement and consents to all its terms.  I believe the plea and disposition set forth herein are appropriate under the facts of this case and are in accord with my best judgment.  I concur in the entry of the plea agreement on the terms and conditions set forth herein.

10.18.2024
_____
DATE

MURDOCH WALKER, II
Defendant's Counsel

## XVI.    GOVERNMENT'S ACKNOWLEDGMENT

I have reviewed this matter and this plea agreement and concur that the plea and disposition set forth herein are appropriate and are in the interests of justice.

PRIM F. ESCALONA
United States Attorney

10/29/2024
_____
DATE

LLOYD C. PEEPLES
Assistant United States Attorney

Defendant's Initials _____